**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge William J. Martínez**

Civil Action No. 25-cv-3387-WJM-MDB

KALEIGH M. WILKERSON,

Plaintiff,

v.

RENTDEBT AUTOMATED COLLECTIONS, LLC;
EXPERIAN INFORMATION SOLUTIONS, INC.;
EQUIFAX INFORMATION SERVICES, LLC; and
TRANS UNION, LLC,

Defendants.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

---

This matter is before the Court on a Rule 12(c) Motion for Judgment on the Pleadings ("Motion") brought by Consumer Reporting Agencies ("CRAs"), Equifax Information Services, LLC; Experian Information Solutions, Inc.; and TransUnion, LLC (collectively, "CRA Defendants"), in this action against Plaintiff, Kaleigh M. Wilkerson ("Plaintiff"). (ECF No. 53.) For the following reasons, the Motion is granted.

## I. BACKGROUND

The following allegations, contained in Plaintiff's Complaint (ECF No. 1.), are accepted as true for purposes of resolving the Motion:[1]

[1] The Court accepts as true the well-pleaded factual allegations of the non-moving party and draws all reasonable inferences in its favor. *See Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).

Plaintiff previously leased a Colorado residence through Pathlight Property Management ("Pathlight"). (*Id*. at ¶ 18.) On August 15, 2023, she and Pathlight executed a Move-Out and Lease Termination Agreement ("Agreement"), which "had the ultimate effect of leaving [her] balance with them at $0.00." (*Id*. at ¶ 19.) She vacated the property, as required, and received a confirmation e-mail from Pathlight. (*Id*. at ¶ 20.) As of this date, "no valid debt existed for Pathlight or any of its collection agents to report." (*Id*. at ¶ 21.)

Despite knowledge of the executed termination agreement, RentDebt Automated Collect ("RentDebt")—a codefendant in this case—began furnishing credit data to the CRAs in February 2024, stating a balance of $20,048.00 owed to Pathlight. (*Id*. at ¶ 22.) RentDebt never contacted Plaintiff before disseminating these reports, nor did it verify the debt's validity with Pathlight. (*Id*. at ¶ 23.) Although Plaintiff submitted reinvestigation requests in June-August 2025, citing the Agreement, RentDebt continued to verify the information was accurate.[2] (*Id*. at ¶ 24.) As a result, the allegedly false debt balance remained on Plaintiff's consumer reports for more than a year. (*Id*. at ¶ 25.)

In addition to disputing her credit data with RentDebt, Plaintiff separately sent certified dispute letters to Equifax, Experian, and TransUnion, attaching her government ID, Social Security Card, and the Agreement. (*Id*. at ¶¶ 26, 31, 35.) All three CRA

---

[2] Although Plaintiff brings claims against RentDebt (a data furnisher), alongside the CRAs Defendants, the instant motion is brought only by the latter. The Court understands that Plaintiff and RentDebt have resolved their disputes and that a settlement is pending between them.

Defendants received notice of the dispute.[3] (*Id*. at ¶¶ 27, 32, 36.) All three CRA Defendants continued to publish the $20,048 debt balance. (*Id*. at ¶¶ 30, 34, 37.)

As a result of her allegedly false debt balance, Plaintiff experience a lowered credit score, as well as elevated "humiliation, stress, and anxiety." (*Id*. at ¶ 40.) She was also denied three lines of credit. (*Id*. at ¶ 39.) Plaintiff brought six causes of action, four of which were directed at the CRA Defendants for both negligent and willful violations of two provisions in the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., for: (1) failure to establish reasonable procedures to assure maximum possible accuracy in the preparation of her consumer credit report, pursuant to § 1681e(b); and (2) failure to conduct reasonable reinvestigations upon notice of inaccuracy in her consumer credit report, pursuant to § 1681i(a).[4] (*Id*. at ¶¶ 53–80.)

## II. LEGAL STANDARD

### A. Rule 12(c) Standard

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is evaluated under the same standard applicable to a Rule 12(b)(6) motion to dismiss. *See Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223–24 (10th Cir. 2009). Therefore, in ruling on a motion for judgment on the pleadings, courts look to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief—that is, a complaint must include "enough facts to state a claim for relief that is plausible on its face." *TON Servs., Inc. v. Qwest*

[3] According to the Complaint, only Equifax notified RentDebt, before verifying the information as accurate in its investigation results. (*Id*. at ¶¶ 27, 32, 36.)

[4] The first and second causes of action were brought only against RentDebt for willful and negligent violations of 15 U.S.C. § 1681s-2(b), which concerns data furnishers (as opposed to CRAs).

*Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007); *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). The Court accepts as true the well-pleaded factual allegations of the non-moving party and draws all reasonable inferences in its favor. *See Nelson*, 419 F.3d at 1119.

In ruling on a motion for judgment on the pleadings, the Court may consider the complaint, any material that is attached to the complaint, and the answer. *See Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). Importantly, "[a] claim dismissed under Rule 12(c) may be dismissed with or without prejudice, as would be otherwise warranted." *Luizzi v. State Farm Mut. Auto. Ins. Co.*, 815 F. Supp. 3d 1220, 1228 n.2 (D. Colo. 2025).

**B. CRA Duties Under the FCRA**

"Congress enacted the FCRA in 1970 to protect consumer privacy and to ensure fair and accurate credit reporting." *Owner-Operator Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.*, 537 F.3d 1184, 1187 (10th Cir. 2008) (citing 15 U.S.C. § 1681; *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). To that end, "[t]he FCRA imposes obligations on three types of entities: consumer reporting agencies, users of consumer reports[,] and furnishers of information to consumer reporting agencies." *Plater v. Phoenix Fin. Servs.*, 762 F. Supp. 3d 1098, 1103 (W.D. Okla. 2024) (internal citations omitted).

Section 1681e mandates that whenever a CRA prepares a consumer report, it "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Separately, section 1681i requires that, upon receiving notice of a

consumer's dispute, a CRA "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate . . . ." 15 U.S.C. § 1681i(a)(1)(A). To succeed on a claim under either provision, a plaintiff must "establish that: (1) [the CRA] failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report in question was, in fact, inaccurate; (3) [the plaintiff] suffered injury; and (4) [the CRA's] failure caused his injury." *Eller v. Trans Union, LLC*, 739 F.3d 467, 473 (10th Cir. 2013).[5]

The Tenth Circuit, like other circuits, has held that "[a] reasonable reinvestigation, however, does not require CRAs to resolve *legal disputes* about the validity of the underlying debts they report." *Wright v. Experian Info. Sols.*, 805 F.3d 1232, 1242 (10th Cir. 2015) (emphasis added). In *Wright*, a consumer disputed a federal tax lien appearing on his credit report, arguing that he had already paid the Internal Revenue Service and that the lien was inaccurately against him personally and not to his LLC. *Id*. at 1235. The Tenth Circuit affirmed summary judgment for the CRAs. *Id*. at 1242. It held that determining the tax lien's legal validity, which purportedly required "individuals trained in American tax law," was beyond the scope of duties imposed on CRAs by the FCRA. *Id*. The *Wright* court relied on the Ninth Circuit's observation that "CRAs are ill equipped to adjudicate contract disputes" and that "reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts." *Id*. at

[5] A section 1681i(a) claim requires a plaintiff to "prove essentially the same elements as those for a § 1681e(b) claim—unreasonable procedures in reinvestigating a report, inaccuracy of the report, injury, and causation—in addition to proving they informed the CRA about the inaccuracy." *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015).

1242, 1245 (citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891–92 (9th Cir. 2010)).[6]

Unfortunately, "[a] clear line has not been drawn between legal and factual inaccuracies in the FCRA context," either in this Circuit or others. *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021). A "paradigmatic" legal dispute, in the FCRA context, is "when a consumer argues that although his debt exists and is reported in the right amount, it is invalid due to a violation of law." *Id*. It may also resemble a consumer's action challenging the "validity" of their mortgage (*see DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008)); a consumer's "legal defense[] to their debts" (*see Denan v. Trans Union LLC*, 959 F.3d 290, 295–96 (7th Cir. 2020)); the question of whether a consumer is "entitled to a suspension of collection[s]" pending a disability discharge application (*see Humphrey v. Trans Union LLC*, 759 F. App'x 484, 487 (7th Cir. 2019)); or a dispute that would "require CRAs to wade into individual bankruptcy dockets to discern whether a debt survived discharge" (*see Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1109 (8th Cir. 2022)).

Factual inaccuracies, on the other hand, may resemble the "omission of a court order stating no further child support is owed" (*see Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 540 (6th Cir. 2024) (alterations in original)); mischaracterization of contact terms in a manner inconsistent with the actual written contract (*see Sessa v.*

---

[6] The most recent Tenth Circuit authority addressing the FCRA's accuracy requirements is *Ward v. Nat'l Credit Sys.*, Inc., 182 F.4th 918 (10th Cir. 2026). There, the Tenth Circuit held that a consumer asserting an unreasonable investigation claim against a *data furnisher* must show that the disputed information was "objectively and readily verifiable." *Id*. at 933–35. Although *Ward* addressed data furnishers' obligations under 15 U.S.C. § 1681s-2(b) the Tenth Circuit did not decide whether this standard also applies to CRAs' obligations pursuant to §§ 1681e(b) & 1681i(a).

*Trans Union, LLC*, 74 F.4th 38, 41–43 (2d Cir. 2023)); "improperly duplicated . . . charges" that were reported to the CRAs (*see Brutus v. Yes Companies Fred, LLC*, 754 F. Supp. 3d 1161, 1164–65 (N.D. Fla. 2024)); or a "material omission" of "technically accurate information," such as the existence of a trial period plan, which renders said "accurate information misleading and, thus, actionable under the FCRA." *See Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 812–13 (7th Cir. 2023). Accordingly, a disputed inaccuracy that resembles those in the latter line of case law triggers a CRAs reinvestigation obligations.

## III. ANALYSIS

The viability of Plaintiff's Complaint turns on whether it plausibly alleges a factual inaccuracy that CRA Defendants may—and are statutorily obligated to—investigate; or instead, asks them to impermissibly resolve a legal dispute about the legal validity of Plaintiff's debt. Even more specifically, it hinges on whether the Agreement's effect on Plaintiff's debt is a purely factual question, or one that requires any specialized legal analysis or contract interpretation. Although this Court can certainly envision a scenario in which determining the Agreement's effect on Plaintiff's debt presents a straightforward question of fact—requiring only the application of law to fact—the Complaint does not presently plausibly allege that the reported balance was factually inaccurate.

Plaintiff has not plausibly pleaded a factual inaccuracy, such as an error in the amount of debt obligations, improperly duplicated charges, mischaracterization of contract terms, or a material omission of information. (ECF No. 1). Instead, she pleads that she "executed" an Agreement with her former lessor, Pathlight, "which had the

ultimate effect of leaving [her] balance with them at $0.00." (*Id*. at ¶ 19.) In their Rule 12(c) Motion, CRA Defendants point out that Plaintiff's disputed inaccuracy—premised on the legal effect of the Agreement with Pathlight— is a purely legal question for them to address. (ECF No. 53 at 3.) They stress, axiomatically, that CRA Defendants are "not qualified nor obligated to resolve [legal disputes] under the FCRA." (*Id*. at 5.) (citing *Rydholm*, 44 F.4th at 1109; *Carvalho*, LLC, 629 F.3d at 891; *Humphrey*, 759 F. App'x at 488; *Thomas v. Equifax Info. Servs. LLC*, 2019 WL 948996, at *2-3 (D. Colo. Feb. 27, 2019); *Denan v. Trans Union LLC*, 2019 WL 911270, (N.D. Ill. Feb. 22, 2019)).

Plaintiff responds that she is not asking CRA Defendants to adjudicate the legal significance of the Agreement or interpret its terms. (ECF No. 54 at 3.) Rather, she contends that they needed only to contact Pathlight, the property manager, or RentDebt, the data furnisher, to determine whether the reported balance remained outstanding. (*Id*. at 3–4.) In her view, "[a] simple phone call or email would have been the minimum amount of work needed to fulfill their statutory duties." (*Id*. at 4.)

But Plaintiff's characterization of the requested investigation does not resolve the issue. The question is not whether CRA Defendants could have contacted Pathlight or RentDebt by phone or e-mail, but whether the Complaint plausibly alleges a factual inaccuracy that could be identified through a reasonable reinvestigation without requiring CRA Defendants to resolve a legal dispute. *See Wright*, 805 F.3d at 1242. Plaintiff identifies no authority establishing that the effect of the Agreement on her outstanding debt is a purely factual matter. (ECF No. 54 at 3.) Nor does she explain how the Agreement rendered the reported balance inaccurate, as opposed to establishing a legal basis for disputing the debt. (*Id*.)

Plaintiff also asserts that "CRAs must look beyond information furnished to them when it is inconsistent with the CRAs' own records, contains a facial inaccuracy, or comes from an unreliable source." (*Id*. at 3.) But nowhere in her Complaint does she identify such a conflict, facial inaccuracy, or reliability concern here. (*See generally* ECF No. 1.) Instead, her theory rests on the proposition that the Agreement "had the ultimate effect of leaving [her] balance with them at $0.00." (*Id*. at ¶ 19.) Without factual allegations explaining how the Agreement had that effect, or otherwise establishing that the reported balance was inaccurate, the Complaint does not plausibly allege a factual inaccuracy that CRA Defendants were required to identify through reinvestigation.

The Court does not hold that every dispute involving a contract between a consumer and a creditor necessarily presents an impermissible legal question absolving CRAs of their reasonable procedure or reinvestigation obligations under §§ 1681e & 1681i, respectively. Nor does it foreclose the possibility that the Agreement's effect on Plaintiff's debt balance could be established through a straightforward application of law to fact. But the Complaint, as pleaded, does not provide the factual allegations necessary to make that determination. Accordingly, Plaintiff has not plausibly alleged that the reported balance was inaccurate in a manner actionable under the FCRA, insofar as it implicates CRA Defendants.

The Motion will therefore be granted. The Court concludes, however, that the interest of justice is best served by dismissing the Complaint without prejudice, and granting leave to Plaintiff to file an amended complaint which cures the pleading deficiencies noted in this Order. *See, Luizzi*, 815 F. Supp. 3d 1220.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. CRA Defendants' Motion (ECF No. 53) is GRANTED;
2. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITHOUT PREJUDICE; and
3. Plaintiff is GRANTED leave to file an amended complaint by no later than **November 13, 2026**.

Dated this 16th day of October, 2026.

BY THE COURT:

William J. Martínez
Senior United States District Judge